**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

**CLAYTON JAY MARTIN,**

       **Plaintiff,**

       **v.**                            **CASE NO.  23-3164-JWL**

**BRIAN BELLENDIR, et al.,**

       **Defendants.**

**MEMORANDUM AND ORDER**
**TO SHOW CAUSE**

       Plaintiff Clayton J. Martin is hereby required to show good cause, in writing to the undersigned, why this action should not be dismissed due to the deficiencies in Plaintiff's Complaint that are discussed herein.

**I.  Nature of the Matter before the Court**

       Plaintiff brings this pro se action under 42 U.S.C. § 1983.  Plaintiff is currently in custody at the Finney County Jail in Garden City, Kansas.  However, his claims here are based on his confinement at the Barton County Jail in Great Bend, Kansas.

       Plaintiff brings two claims.  Count I relates to his state criminal proceedings.  *See State v. Martin*, Case No. 2020-CR-25 (District Court of Barton County, Kansas).  Plaintiff alleges that he was arrested on a Barton County District Court warrant on December 6, 2021, and was held with no bond until February 24, 2022.  He claims that the warrant states that "bond was reinstated." (Doc. 1, at 6).  He asserts that he was unlawfully detained in violation of his Fourth Amendment right to be free from unreasonable seizure.  *Id.*

       As Count II, Plaintiff claims violation of his right to be free from cruel and unusual

punishment.  Plaintiff states that he "became outraged" when Sheriff Bellendir told him that he should take up his complaints about the warrant and bond with the state court judge.  *Id*. at 3.  "Conflict exploded" between Corporal Vonfelt and Plaintiff, with Plaintiff saying "unpleasant words" to Vonfelt.  *Id*.  When Bellendir told Vonfelt to suspend Plaintiff's kiosk privileges and lock him down, Plaintiff broke the kiosk and refused to lock down.  He was then tased by two officers simultaneously and placed in a restraint chair.  *Id*. at 6-7.  Plaintiff was on "23 and 1" lockdown for 12 days, then on 24-hour lockdown for 11 days, then on 23 and 1 lockdown again until he was released on personal recognizance bond on February 24, 2022.  *Id*. at 4.  Plaintiff claims that he was "never served with a disciplinary report and or charge with crime 'destruction of property.''  *Id*. at 3.  Plaintiff also claims that he was denied medical attention February 11, 2022.  *Id*. 4, 7.

Plaintiff names as defendants Sheriff Bellendir and Doug Parks, Administrator of the Barton County Jail.  Plaintiff seeks $1,000 per day for each day of unlawful incarceration (not to exceed 81 days), $5,000 per day for every day he was on 24-hour lockdown (not to exceed 13 days), and $100,000 for "all future mental health appointments and prescriptions."  *Id*. at 10.

## II.  Statutory Screening of Prisoner Complaints

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1)– (2).

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by

the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins,* 487 U.S. 42, 48 (1988) (citations omitted); *Northington v. Jackson*, 973 F.2d 1518, 1523 (10th Cir. 1992). A court liberally construes a pro se complaint and applies "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In addition, the court accepts all well-pleaded allegations in the complaint as true. *Anderson v. Blake*, 469 F.3d 910, 913 (10th Cir. 2006). On the other hand, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," dismissal is appropriate. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

A pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citations omitted). The complaint's "factual allegations must be enough to raise a right to relief above the speculative level" and "to state a claim to relief that is plausible on its face." *Id.* at 555, 570.

The Tenth Circuit Court of Appeals has explained "that, to state a claim in federal court, a complaint must explain what each defendant did to [the *pro se* plaintiff]; when the defendant did it; how the defendant's action harmed [the plaintiff]; and, what specific legal right the plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007). The court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citation omitted).

The Tenth Circuit has pointed out that the Supreme Court's decisions in *Twombly* and *Erickson* gave rise to a new standard of review for § 1915(e)(2)(B)(ii) dismissals. *See Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007) (citations omitted); *see also Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). As a result, courts "look to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief." *Kay*, 500 F.3d at 1218 (citation omitted). Under this new standard, "a plaintiff must 'nudge his claims across the line from conceivable to plausible.'" *Smith*, 561 F.3d at 1098 (citation omitted). "Plausible" in this context does not mean "likely to be true," but rather refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent," then the plaintiff has not "nudged [his] claims across the line from conceivable to plausible." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Twombly*, 127 S. Ct. at 1974).

## III. DISCUSSION

### 1. *Younger* Abstention

The Court may be prohibited from hearing Plaintiff's claim in Count I under *Younger v. Harris*, 401 U.S. 37, 45 (1971). "The *Younger* doctrine requires a federal court to abstain from hearing a case where . . . (1) state judicial proceedings are ongoing; (2) [that] implicate an important state interest; and (3) the state proceedings offer an adequate opportunity to litigate federal constitutional issues." *Buck v. Myers*, 244 F. App'x 193, 197 (10th Cir. 2007) (unpublished) (citing *Winnebago Tribe of Neb. v. Stovall*, 341 F.3d 1202, 1204 (10th Cir. 2003); *see also Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982)). "Once these three conditions are met, Younger abstention is non-discretionary and, absent extraordinary circumstances, a district court is required to abstain." *Buck*, 244 F. App'x at 197

(citing *Crown Point I, LLC v. Intermountain Rural Elec. Ass'n*, 319 F.3d 1211, 1215 (10th Cir. 2003)).

An online Kansas District Court Records Search shows that Case No. 2020-CR-25 is remains "Pending/Reopened."  *See State v. Martin*, Case No. 2020-CR-25 (District Court of Barton County, Kansas).  Therefore, it appears that the first and second conditions for *Younger* abstention would be met because Kansas undoubtedly has an important interest in enforcing its criminal laws through criminal proceedings in the state's courts.  *In re Troff*, 488 F.3d 1237, 1240 (10th Cir. 2007) ("[S]tate control over criminal justice [is] a lynchpin in the unique balance of interests" described as "Our Federalism.") (citing *Younger*, 401 U.S. at 44).   Likewise, the third condition would be met because Kansas courts provide Plaintiff with an adequate forum to litigate his constitutional claims by way of pretrial proceedings, trial, and direct appeal after conviction and sentence, as well as post-conviction remedies.  *See Capps v. Sullivan*, 13 F.3d 350, 354 n.2 (10th Cir. 1993) ("[F]ederal courts should abstain from the exercise of . . . jurisdiction if the issues raised . . . may be resolved either by trial on the merits in the state court or by other [available] state procedures.") (quotation omitted); *see Robb v. Connolly*, 111 U.S. 624, 637 (1984) (state courts have obligation 'to guard, enforce, and protect every right granted or secured by the constitution of the United States . . . .'"); *Steffel v. Thompson*, 415 U.S. 452, 460–61 (1974) (pendant state proceeding, in all but unusual cases, would provide federal plaintiff with necessary vehicle for vindicating constitutional rights).    Plaintiff should show good cause why the Court should not abstain under *Younger*.

**2. *Heck* Bar**

In *Heck v. Humphrey*, the United States Supreme Court held that when a state prisoner seeks damages in a § 1983 action, the district court must consider the following:

whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

*Id*. at 487.   In *Heck*, the Supreme Court held that a § 1983 damages claim that necessarily implicates the validity of the plaintiff's conviction or sentence is not cognizable unless and until the conviction or sentence is overturned, either on appeal, in a collateral proceeding, or by executive order.  *Id*. at 486–87.

Further, the rule in *Heck* is not limited to claims challenging the validity of criminal convictions.  *Ippolito v. Just. Serv. Div.*, No. 13-CV-03480-BNB, 2014 WL 459757, at *2 (D. Colo. Feb. 4, 2014), *aff'd,* 562 F. App'x 690 (10th Cir. 2014), citing *see Edwards v. Balisok,* 520 U.S. 641 (1997) (applying *Heck* to a § 1983 claim challenging procedures used to deprive a prison inmate of good time credits); *Hamilton v. Lyons,* 74 F.3d 99, 102–03 (5th Cir. 1996) (applying *Heck* to a § 1983 claim challenging the coercive nature of a pretrial detainee's confinement prior to giving a statement regarding pending charges).

Because Plaintiff "would need to prove that his detention [is] unlawful in order to receive an award of damages for that detention," Count I is barred by *Heck.  Ippolito,* 2014 WL 459757, at *2, quoting *Cohen v. Clemens,* No. 08–1394, 321 F. App'x 739, 742 (10th Cir. April 7, 2009) (unpublished), and citing *Jackson v. Thomas,* No. H–08–1990, 2009 WL 1748866, at *2 (S.D. Tex. 2009) (unpublished) (plaintiff's claim that defendants lacked probable cause to revoke his bond based on results of urine testing imposed as a condition of bond was barred by *Heck).*

### 3.  Failure to State a Claim for Excessive Force

"Excessive force claims are cognizable under the Fourth, Fifth, Eighth, and Fourteenth Amendment, depending on where in the criminal justice system the plaintiff is at the time of the challenged use of force."  *Vette v. K-9 Unit Deputy Sanders*, 989 F.3d 1154, 1169 (10th Cir. 2021)

(citation omitted).  Claims of mistreatment while in state pretrial confinement are not covered by the Fourth Amendment or the Eighth Amendment.  *Colbruno v. Kessler*, 928 F.3d 1155, 1162 (10th Cir. 2019).  They are assessed under the Fourteenth Amendment.  *Id.*

The Supreme Court held in *Kingsley v. Hendrickson* that "the appropriate standard for a pretrial detainee's excessive[-]force claim is solely an objective one" and that therefore "a pretrial detainee can prevail by providing only objective evidence that the challenged governmental action is not rationally related to a legitimate governmental objective or that it is excessive in relation to that purpose."  *Brown v. Flowers*, 974 F.3d 1178, 1182 (10th Cir. 2020) (quoting *Kingsley v. Hendrickson*, 576 U.S. 389, 135 S. Ct. 2466, 2473–74, 192 L. Ed. 2d 416 (2015)); *see also Colbruno*, 928 F.3d at 1163 ("[T]here is no subjective element of an excessive-force claim brought by a pretrial detainee.").

Not every isolated battery or injury to an inmate amounts to a federal constitutional violation.  *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (stating that not "every malevolent touch by a prison guard gives rise to a federal cause of action.") (citing *Johnson v. Glick*, 481 F.2d 1028, 1033 (2nd Cir. 1973) ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights")).

Plaintiff alleges that he became enraged and verbally and physically violent, breaking the kiosk, and refused to lock down.  He was then tased by two jail officials and placed in a restraint chair.  These allegations fail to state a claim for violation of Plaintiff's constitutional rights.  It appears from the Complaint that the tasing was rationally related to the legitimate governmental objective of maintaining jail security and order and was not excessive in relation to that purpose. Plaintiff's excessive force claim in Count II is therefore subject to dismissal.

### 4.  Failure to State a Claim based on Placement in Lockdown

As a pretrial detainee, Plaintiff is protected from punishment without due process.  *Peoples v. CCA Detention Centers*, 422 F.3d 1090, 1106 (10th Cir. 2005) (citing *Bell v. Wolfish*, 441 U.S. 520, 535 (1979)).  A pretrial detainee still may be subjected to restrictions while incarcerated, but the conditions and restrictions imposed may not constitute punishment.  *Id*.  The core question is whether the restriction is "imposed for the purpose of punishment or whether it is incident to some other legitimate government purpose."  *Id*. (citation omitted).  Thus, if a pretrial detainee is placed in segregation for a managerial purpose and not for punishment, no process is required.  *Peoples*, 422 F.3d at 1106 (citation omitted).

"Ensuring security and order at the institution is a permissible nonpunitive objective, whether the facility houses pretrial detainees, convicted inmates, or both."  *Bell*, 441 U.S. at 561 (citation omitted).  "Restraints that are reasonably related to the institution's interest in maintaining jail security do not, without more, constitute unconstitutional punishment, even if they are discomforting and are restrictions that the detainee would not have experienced had he been released while awaiting trial."  *Bell*, 441 U.S. at 540.  "[I]n addition to ensuring the detainees' presence at trial, the effective management of the detention facility once the individual is confined is a valid objective that may justify imposition of conditions and restrictions of pretrial detention and dispel any inference that such restrictions are intended as punishment."  *Id*.  The Supreme Court has warned that these decisions "are peculiarly within the province and professional expertise of corrections officials, and, in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations, courts should ordinarily defer to their expert judgment in such matters."  *Id*. at 540, n.23 (citations omitted).

Plaintiff has failed to show that his placement in lockdown or segregation constituted

unconstitutional punishment.  Plaintiff's claim in Count II based on this placement is subject to dismissal for failure to state a claim.

### 5. Failure to State a Claim based on Denial of Medical Care

In Count II, Plaintiff alleges that Defendant Parks failed to properly respond to Plaintiff's grievance seeking medical care.  "[D]eliberate indifference to a pretrial detainee's serious medical needs includes both an objective and a subjective component."  *Strain v. Regalado*, 977 F.3d 984, 989 (10th Cir. 2020) (finding that although a pretrial detainee's claim is based on the Fourteenth Amendment, the same standard for Eighth Amendment claims applies).  To establish the objective component, "the alleged deprivation must be 'sufficiently serious' to constitute a deprivation of constitutional dimension."  *Id*. at 989–90 (citations omitted).

A medical need is sufficiently serious "if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  *Id*. at 990 (citation omitted).  The "negligent failure to provide adequate medical care, even one constituting medical malpractice, does not give rise to a constitutional violation."  *Perkins v. Kan. Dep't of Corr.*, 165 F.3d 803, 811 (10th Cir. 1999) (citing *Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976)).

In situations where treatment was delayed rather than denied altogether, the Tenth Circuit requires a showing that the inmate suffered "substantial harm" as a result of the delay.  *Sealock v. Colorado*, 218 F.3d 1205, 1210 (10th Cir. 2000) (citation omitted).  "The substantial harm requirement 'may be satisfied by lifelong handicap, permanent loss, or considerable pain.'"  *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005) (quoting *Garrett v. Stratman*, 254 F.3d 946, 950 (10th Cir. 2001)).

Plaintiff fails to allege what medical care he was seeking or medical need was involved, beyond attaching a grievance form saying he was having stomach pain and difficult bowel movements. *See* Doc. 1-1, at 5. The Court cannot determine whether or not the need was sufficiently serious. Thus, Plaintiff has not satisfied the objective prong for proving a constitutional violation.

Plaintiff also fails to satisfy the subjective prong. The Supreme Court has insisted upon actual knowledge: "the official must *both* be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, *and he must also draw the inference*." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994) (emphasis added). Plaintiff claims Defendant Parks failed to properly respond to Plaintiff's grievance regarding medical care. Plaintiff has failed to show that the official was both aware of facts from which the inference could be drawn that a substantial risk of serious harm existed, and that they also drew the inference.

Plaintiff's claim in Count II based on inadequate medical care is subject to dismissal.

**6. Request for Relief**

Plaintiff seeks relief in the form of compensatory damages. However, any request for compensatory damages is barred by 42 U.S.C. § 1997e(e) unless Plaintiff alleges a physical injury. Section 1997e(e) provides in pertinent part that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e).

**IV. Response Required**

Plaintiff is required to show good cause why his Complaint should not be dismissed for the reasons stated herein. Failure to respond by the deadline may result in dismissal of this matter without further notice.

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiff is granted until **September 4, 2023,** in which to show good cause, in writing to the undersigned, why Plaintiff's Complaint should not be dismissed for the reasons stated herein.

**IT IS SO ORDERED**.

**Dated August 4, 2023, in Kansas City, Kansas.**

<u>S/  John W. Lungstrum</u>
**JOHN W. LUNGSTRUM**
**UNITED STATES DISTRICT JUDGE**